THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.*
CHARLES SUYDAM, JR., Respondent.

Forest, Fish and Game Law — construction of provision (section 103) attempting to prohibit the transportation of game during the closed season — a person who delivers game to common carrier for transportation not guilty of a violation of the statute.

1. Section 103 of the Forest Fish and Game Law provides, among other things, that "No person shall at any time transport any birds or fish for which a close season is provided in any package unless the kind and number of such birds or fish shall be plainly marked on the outside of said package, together with the names of consignor and consignee, the initial point of billing and the destination." And it declares that "The reception by any person or common carrier within this state of any such birds or fish for shipment in an unmarked package shall constitute a violation of this section by such person or common carrier."

2. Assuming that the provisions of the section apply to such shipments of such birds or fish from one place to another within the state, it imposes no penalty upon a person who delivers such birds or fish to an expressman or to a railroad company for transportation.

3. The only penalty prescribed by the above-quoted part of the section is against a *person or common carrier who receives such birds or fish for shipment.*

*People* v. *Suydam,* 140 App. Div. 864, affirmed.

(Argued February 1, 1912; decided February 13, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered November 26, 1910, affirming a judgment in favor of defendant entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Thomas Carmody, Attorney-General (John O. Bates* and *John T. Norton* of counsel), for appellant. There was a transportation within the meaning of the statute. (*People* v. *Booth & Co.,* 105 App. Div. 184.) The statute was drawn with reference to both common carriers and individuals. (*People* v. *White,* 124 App. Div. 79;

*People* v. *Booth & Co.*, 105 App. Div. 184; *People* v. *Stillman*, 117 App. Div. 170.)

*John R. Vunk* for respondent. ˙ The defendant had not transported said birds for the reason that they had not been delivered to the express company. (*Grosvenor* v. *N. Y. C. R. R. Co.*, 39 N. Y. 34; *Rogers* v. *L. I. R. R. Co.*, 56 N. Y. 620.)

Werner, J. This action was brought to recover penalties aggregating six hundred and ten dollars for alleged violation of the Forest, Fish and Game Law of the state. The substance of the complaint is that on or about the 7th day of January, 1910, the defendant knowingly, willfully, illegally and in violation of section 103 of chapter 24 of the Laws of 1909, transported, attempted to transport and aided and assisted in the transportation of twenty-two ducks, which were birds for which the law prescribes a closed season; that the transportation thus effected or attempted was made in a package upon which the number and kinds of said birds was not plainly marked as provided by the statute, and that the defendant thus subjected himself to the prescribed penalty of $60, and an additional penalty of $25 for each bird so illegally transported.

The evidence tended to show that one Charles E. Lee, a game protector of the state, was at the Islip station of the Long Island railroad on the 7th of January, 1910, and while he was there a "Long Island Express Wagon" was driven up to the platform. The driver took from the wagon a box to which was attached a tag marked "C. C. Egbert & Son, 139 Washington Market, N. Y., from F. H. Gates, Islip." The game protector opened this box and found that it contained twenty-two ducks, nineteen of them being "Broadbills," two of them "Shell Drakes" and one a "Whistler," and these were all birds for which there is a closed season. The game protector seized the birds, and after he had done so the defendant claimed to

own them, stating that he had shipped them in the name of Gates. It further appears that the defendant marked the box, which, in addition to the tag above referred to, contained the following marks: "19 B. B.," which were explained as meaning "Broad Bills," a word which was indistinctly written and was said to be "Whistler," and other marks, "1. S. D.," which were interpreted as meaning "Shell Drake." The box thus marked was placed by the defendant in a "Long Island Express Wagon" belonging to a company or owner having the right to gather packages designed for shipment on the Long Island railroad and to convey them to the railroad station. The game protector seized the box at the station before it had been accepted by the station agent.

The learned court at Trial Term directed a verdict for the defendant, and from the judgment entered upon that decision an appeal was taken to the Appellate Division, where the judgment was affirmed by a unanimous concurrence in the result and a divided vote as to the ground upon which the affirmance should be based. Opinions were written by Justices WOODWARD and BURR, and their discussion discloses the difficulty of construing a statute which is full of confusing phraseology and apparently antagonistic sections. We shall not follow this discussion, for we entertain a view of the statute which leads to the same result by a much shorter and simpler process.

The defendant is charged, as we have seen, with having violated the provisions of section 103 of the Forest, Fish and Game Law. The specification of the charge is that he knowingly and willfully transported or attempted to transport twenty-two ducks, which were birds protected by a prescribed close season, in a package upon which the number and kind of said birds was not plainly marked as provided by the statute. We think that a proper analysis of section 103 discloses no provision creating such an offense, except as against a person or common carrier receiving such birds for transportation. The sec-

tion provides that "birds or quadrupeds or parts thereof, game, except fish taken in this state, shall not except as herein provided and as provided in section one hundred and four, be transported without the state; nor shall the same be taken and possessed with intent to transport the same without the state. Any person doing any act with reference to such birds or game or in aid of such taking or transportation shall be deemed to have violated this section." The foregoing excerpt from the section may be summarily dismissed from consideration, for it clearly refers to game taken within the state to be transported without the state. The evidence in this record shows that the ducks which the defendant attempted to ship were to be transported from Islip, Long Island, to New York city; that is, from one place to another within the state. Continuing, the statute further provides that, "No person shall at any time transport any birds or fish for which a close season is provided in any package unless the kind and number of such birds or fish shall be plainly marked on the outside of said package, together with the names of the consignor and consignee, the initial point of billing and the destination." A careful reading of this second excerpt from the statute (Section 103) discloses two things. (1) It prescribes the conditions, not for shipment, but for transportation. "No person shall transport" unless the package shall be plainly marked, etc. To transport means "to carry or convey from one place to another; as, to transport baggage; to transport goods; to transport troops." (Webster.) As applied to a company or agency engaged in the carrying of goods from one place to another, either by land or water, the word "transport" has a plain and definite meaning, and that is obviously the sense in which the legislature has used the term in this statute. The person who takes goods to another for transportation is usually called the shipper and he is defined as "one who consigns for shipment, goods, merchandise, or the like, to any common carrier for trans-

portation, as to a railroad or express company." (Webster.) As to a carrier, the term "transport" is apt, plain and precise; as to a shipper, it is inapt and incorrect. (2) Even if we assume, therefore, that the prohibition against transportation, except under the prescribed conditions, relates to conveyance or carriage between points within the state, as to which there is some doubt, it seems to be directed against carriers as distinguished from shippers. This is made very plain by the succeeding portion of the section which we now quote. "The reception by any person or common carrier within this state, of any such bird or birds or fish for shipment in an unmarked package shall constitute a violation of this section by such person or common carrier." The reception for shipment in an unmarked package is the only violation of the section defined by its terms. The defendant delivered the package to the express company. He did not *receive* it. The meaning of this sentence is further elucidated by the collocation of the words "person" and "common carriers." It is as though the legislature had said, "any common carrier, individual or corporate, who shall receive for shipment, fish or game in an unmarked package shall be deemed guilty of violating this section."

Whatever the many sections of this complicated and obscurely-phrased statute may mean with reference to the transportation of birds which are protected by a close season, we can see no escape from the conclusion that section 103, under which the defendant is being prosecuted, defines no offense of which he has been shown to be guilty. He did not receive any birds or game for shipment in an unmarked package, and that is the only act which, by section 103, is declared to be a violation of the statute.

The judgment should be affirmed, with costs.

CULLEN, Ch. J., GRAY, WILLARD BARTLETT, HISCOCK, CHASE and COLLIN, JJ., concur.

Judgment affirmed.